STATE OF FLORIDA *ex rel.* R. L. KENNERLY, v. ERNEST AMOS, COMPTROLLER OF THE STATE OF FLORIDA, *Respondent.*

Opinion Filed December 8, 1919.

1. When not controlled by organic law, the payment of money from the State Treasury may be made only upon the conditions prescribed by statute.

2. Mandamus will not be used to control the discretion of the Comptroller in issuing warrants on the State Treasury under Chapter 6816 Acts of 1915, to "refund to the holders" of illegal tax sale certificates the amounts paid to the State for such certificates.

A Writ of Error to the Circuit Court for Leon County; E. C. Love, Judge.

Affirmed.

*Myers & Myers,* for Relator;

*Van C. Swearingen,* Attorney General, and *Worth W. Trammell,* Assistant, for Respondent.

WHITFIELD, J.—The Circuit Court issued an alternative writ of mandamus wherein it is, in effect, alleged that R. L. Kennerly, on August 7, 1916, purchased from the Tax Collector of Putnam County, at public auction, for $471.45, certain lands described in a stated tax sale certificate No. 522, said sum being the amount due and unpaid for taxes, costs and charges on said lands for the year 1915; that the said certificate was issued to and is held by Kennerly; that on November 17, 1917, Kennerly "presented said certificate to the Clerk of the Circuit Court of Putnam County, Florida, and proved to the said Clerk that the said sale was void; that the description of said lands in said assessment was void; that said lands at the time of said assessment were not assessed to the owner thereof, but that same were assessed to a company that never owned said lands; that said lands were not returned for taxation; that the description of said lands in said assessment was illegal, null and void because said lands could not be located by said description; that the said R. L. Kennerly presented" other stated proofs; "that by said proofs the said R. L. Kennerly proved to the satisfaction of said Clerk that the said assessment and certificate were illegal, null and void on account of the irregularities in

said assessment and failure of the assessor to comply
with the law in making such assessment; that upon due
consideration of said proofs and the records in his office,
the said Clerk did consider and determine that said as-
sessment and certificate were illegal, null and void, and
thereupon the said Clerk, in pursuance of Chapter 6816,
Laws of Florida, did on the 17th day of November, 1917,
make and execute under his hand and official seal a cer-
tificate and did on said date mail said certificate, affi-
davits and certified copy of assessment, and also the said
tax sale certificate No. 522 to the said Ernest Amos,
Comptroller of the State of Florida; and that the said
Clerk did also at the same time enter upon the list of the
land sold for taxes kept in his office, a memorandum of
such fact, as provided by Capter 6816, Laws of Florida,
and the said Ernest Amos, Comptroller of the State of
Florida, received the same within the next day or two
thereafter; and on the 20th day of November, 1917, ack-
nowledged receipt thereof; that on the 20th day of No-
vember, 1917, the said Ernest Amos, as Comptroller of
the State of Florida, returned said affidavits, certified
copy of the assessment and said certificates to the said
Clerk, R. J. Hancock, and the said Ernest Amos, as Comp-
troller of the State of Florida, did then and there refuse
to authorize the cancellation of said tax sale certificate
and refused to refund or authorize the refunding to the
said R. L. Kennerly the moneys to which he was entitled
under Chapter 6816, Laws of Florida."

The command of the writ addressed to Ernest Amos, as
Comptroller, is that he as Comptroller of the State of
Florida do "forthwith notify the said R. L. Kennerly that
upon his voluntary surrender to you of said tax sale cer-
tificate No. 522, that you will refund to him the amount

received by the State by purchase of said certificate, and that upon the surrender of the said certificate you will refund to the said R. L. Kennerly the amount received by the State of Florida by the purchase of said certificate, and that you draw your warrant on the State Treasurer for such sum or sums as may have been shown to you by the said R. L. Kennerly to be due on such account, to be paid out of the General Revenue Fund, or that you show cause why you have not done so," etc.

The respondent, Comptroller, moved to quash the alternative writ on the grounds:

"1st. That the allegations in said alternative writ do not state or constitute a.cause of action that authorizes or entitled relator to the remedy sought and mentioned in said alternative writ, or to the relief prayed for therein.

"2nd. The allegations in said alternative writ are not sufficient to authorize or entitle the relator to mandamus against this respondent as mentioned or prayed for in said alternative writ.

"3rd. That the allegations in said alternative writ do not contain facts to show that the respondent is under legal duty or obligation to perform the things mentioned in said writ and which is sought and prayed therein to have the respondent commanded or compelled to do by mandamus.

"4th. That the alleged duties of the respondent in the premises alleged in said alternative writ are not such as the court will enforce by mandamus in the premises as prayed, demanded or required in said writ.

"5th. That the allegations of said alternative writ do not sufficiently state or show such a breach of legal duty or obligation on the part of respondent, or such failure to

perform the legal duties or obligations on his part, as to authorize or require mandamus or entitle relator to mandamus as therein mentioned or prayed.

"6th.   That it appears upon the face of said alternative writ, and the statutes and exhibits referred to therein, and made a part thereof, that said respondent is not under or legally bound to perform the alleged obligations and duties alleged in said alternative writ which it is sought therein to have the respondent compelled to do and perform.

"7th.   That this respondent has performed the duties required of him under the provisions of Chapter 6416 of the Laws of Florida, in so far as it is required of him in the premises as alleged in said alternative writ of mandamus."

The relator took writ of error from a dismissal of the writ.

Chapter 6816, Acts of 1915, is as follows:

"CHAPTER 6816—(No. 10).

"AN ACT to Amend Section 581 of the General Statutes of the State of Florida, Entitled 'Procedure Where Land Sold for Taxes, the Taxes Having Been Paid, or Land Not Subject to Taxation.'

"*Be It Enacted by the Legislature of the State of Florida:*

"Section 1. That Section 581 of the General Statutes of Florida be and the same is amended so as ot read as follows:

"581.   Proceedure where land sold for taxes, the taxes having been paid, or land not subject to taxation, or for

any other cause. Whenever it shall be proved to the Clerk of the Circuit Court of any County in this State that lands in his county have been sold for unpaid taxes when the taxes on such lands have been paid, or the lands were not subject to taxation at the time of the assessment on which they were sold, (or because the description was void, or because of some error or omission which invalidates the sale, or for any other reason), he shall forward a certificate of such fact to the Comptroller, and enter upon the list of land sold for taxes, kept in his office, a memorandum of such fact.

"The Comptroller upon receipt of such certificate, if satisfied of the correctness thereof, when the certificate of sale is held by the State, shall notify the Clerk, who shall cancel the same, and when the certificate is held by an individual, the Comptroller shall at once notify the original purchaser, or the holder, if known to him, that upon voluntary surrender of the certificate or deed of release of his rights under any tax deed that may have been issued to him upon such certificate, within ninety days of such notification, but not afterward, he will refund to the holder of such certificate, the amount received by the State by the purchase of said certificate and the sum of one dollar for such deed of release as may be necessary; and the County Commissioners shall refund from the General County Tax Fund the amount received by the County on such account, and the Comptroller is hereby directed to draw his warrant on the State Treasurer for such sum or sums as he may be shown to be due on such account, to be paid out of the General Revenue Fund. Provided: that this Act shall not be so construed as to apply to any tax certificate issued by a Tax Collector prior to January 1, 1913.

"Sec. 2.    That all laws or parts of laws in conflict with the provisions of this Act be and the same are hereby repealed. Approved June 5, 1915."

When not controlled by organic law, the payment of money from the State Treasury may be made only upon the conditions prescribed by statute.

The apparent purpose and effect of the above quoted statute is to authorize the Comptroller upon proofs made ex parte before the proper Clerk of a Circuit Court, *that satisfies the Comptroller* that "lands have been sold for unpaid taxes when the taxes on such lands have been paid, or the lands were not subject to taxation at the time of the assessment on which they were sold, or because the description was void, or because of some error or omission which invalidates the sale, or for any other purpose," to draw a warrant on the State Treasurer for "the amount received by the State for the purchase of" the certificate of such sale if it is held by an individual. The drawing of the warrant is not authorized *unless the Comptroller* "is satisfied with the correctness" of the Clerk's certificate as showing some fact "proved to" the clerk which invalidates the sale.   In this case it appears that the Comptroller "refused to refund or authorize the refunding to the said R. L. Kennerly the moneys to which he was entitled under Chapter 6816, Laws of Florida."   And it in effect appears from the letters of the Comptroller attached as exhibits to the alternative writ, that he was not "satisfied of the correctness" of the Clerk's certificate in showing facts which invalidate the sale or render the tax sale certificate void.   The amendment to Section 581 included in brackets in the Act of 1915 above quoted apparently involves judicial matters that might not legally be conferred upon an administrative officer.

Mandamus will not be used to control a discretion vested in the Comptroller under the circumstances of this case even if the Act of 1915 is invalid. See 223 U. S. 683; 190 U. S. 316; 244 U. S. 174; United States ex rel v. Lane, U. S.   , 40 Sup. Ct. Rep. 23, November 10, 1919; 3 Fla. 202; 25 Fla. 298; 61 Fla. 233.

Affirmed.

ELLIS AND WEST, J. J., concur.

TAYLOR, J., concurs in affirmance.

BROWNE, C. J., dissents.

TAYLOR, J.—I concur in the affirmance solely on the ground that the refunding statute confers judicial powers on the Comptroller and Clerks of Circuit Courts and is, therefore, unconstitutional and void.

BROWNE, C. J., dissenting.—The opinion of the majority of the court seems to contain three propositions upon which this court bases its affirmance of the order of the Circuit Judge granting the motion to quash the alternative writ.

1. That the duty imposed upon the Clerk of the Circuit Court to take proof and satisfy himself of the existence of any of the statutory grounds and certify the same to the Comptroller and the County Commissioners, respectively, as their authority to refund the State's and County's portion of the amount paid for tax certificates, is subject to review and reversal by the Comptroller.

2. That the Comptroller has done this, and has de-

cided that he is not satisfied of the correctness of the find-
ing of fact certified to him by the Clerk of the Circuit
Court in the instant case.

3.    That the "amendment to Section 581 involves ju-
dicial matters that might not legally be conferred upon
an administrative officer."

The first and third questions I will discuss after dis-
posing of the second.

It nowhere appears in the record that the Comptrol-
ler has considered the proofs submitted to him by the
Clerk of the Circuit Court and that he is not satisfied of
the correctness of the certificate as to matters of fact.

The decision of this court therefore cannot rest on that
proposition, as the Comptroller nowhere states that he
refuses to make the refund because he "is not satisfied
of the correctness of the certificate."

The stand taken by the Comptroller is, that he will only
consider as authority for a refund, the two grounds set
out in Section 581, and that he will not consider and pass
upon the correctness of the facts found by the Clerk of the
Circuit Court, unless they come within either of these
two grounds.

So much, therefore, of the opinion of the majority of the
court as seems to rest upon the principle, that the Comp-
troller having exercised his discretion, mandamus will not
lie to require him to exercise it in a different manner,
has no foundation in the issues presented, or in the state-
ments of the Comptroller.

I will now consider whether the statute confers upon
the Comptroller the right to review the finding of facts
by the Clerk of the Circuit Court, and if so, has he per-
formed that duty.

Section 581 of the General Statutes provides in part,

that "Whenever it shall be proved to the Clerk of the Circuit Court of any County in this State that lands in his County have been sold for unpaid taxes when the taxes on such lands have been duly paid, or the lands were not subject to taxation at the time of the assessment on which they were sold, he shall forward a certificate of such fact to the Comptroller, and enter upon the list of land sold for taxes kept in his office, a memorandum of such fact. The Comptroller upon receipt of such certificate, if satisfied of the correctness thereof," is required to perform certain duties, one of which is to refund the State's portion of the amount paid for the certificate, in the manner described in the statute.

This is the duty that the mandamus in this case seeks to require him to perform.

The portion of the section quoted *supra* was amended in 1915 by adding to it these additional grounds upon which a refund from the State could be obtained, "because the description was void or because of some error or omission which invalidates the sale, or for any other reason." Both the old and the amended act provide that the existence of these "facts" or any one of them may be "proved to the Clerk of the Circuit Court" and also, that when such fact has been proven to him, he "shall forward a certificate of such fact to the Comptroller, and enter upon the list of land held for payment, kept in his office, a memorandum of such fact." Chap. 6816, Laws of Florida, approved June 5, 1915.

He is thus required after finding the error from which the statute gives relief, to furnish the Comptroller with a certificate that such fact exists as authority for him to draw his warrant for the State's portion of the taxes which it erroneously received; and to enter "upon the

list of land sold for taxes, kept in his office, a memorandum of the fact" as authority for the County Commissioners to refund the county's portion of the tax which it erroneously received.

He gives notice to the Comptroller and to the Board of County Commissioners, so that each may have a record upon which to authorize them to draw warrants for the refund of the State's and the county's portion, respectively.

The Comptroller's authority for refunding the State's portion of the tax is the receipt from the Clerk of the Circuit Court of a correct and properly authenticated certificate of the fact that one or more of the errors enumerated in the statute has been proved; and the County Commissioners' authority for refunding the county's portion, is the entry by the clerk on the list of lands sold for taxes of "a memorandum of that fact." It is contended by the respondent, that the provision of the law that "the Comptroller upon receipt of such certificate, if satisfied of the correctness thereof" makes him, and not the Clerk of the Circuit Court, the officer who is to determine the existence or non-existence of any of the facts that entitle the holder of the certificate to a refund.

I can not accept this construction. I think that his authority is limited to the determination of the correctness of the certificate, as such—and not the truth of the matters contained therein—and when that is done the law imposes upon him a duty, which if he refuses to perform, mandamus will lie.

Conceding, however, that the statute gives the Comptroller power to review the finding of fact certified to him by the Clerk of the Circuit Court and determine its truth, rather than its "correctness," it appears from the record

VOL. 78, JUNE TERM, 1919.	563

State ex rel. Kennerly v. Amos—Opinion of Court.

that he refuses to do this, and consequently the peremptory writ should issue.

I will now discuss that proposition. The Clerk of the Circuit Court, in accordance with the provisions of the Act of 1915, certified: "that it has been proven to me as Clerk of the Circuit Court of Putnam County, Florida, to my full satisfaction that said assessment was erroneous and void for the reason that same were assessed to Palatka Hotel Co., which company did not at the time of said assessment or during the year 1915 own or have any interest in said land or the land intended to be described in said assessment; that said land at the time of said assessment and for all of the year 1915 and from thence hitherto, was the property of and vested in Palatka Hotel & Land Company; that said assessment and certificate was and is erroneous, null and void for the further reason that the land intended to be assessed was not properly described and is not so described as to be capable of definite and positive location; that the said R. L. Kennerly has submitted to me his affidavit which is now on file in my office, showing the invalidity of said assessment; that the said R. L. Kennerly has also submitted to me a certified copy of said assessment, and also said certificate as evidence that said assessment is erroneous, null and void; that I am the true and lawful custodian of all the records of conveyance of land in Putnam County, Florida, and from said records I find that the Palatka Hotel Co. did not own said land at the time of said assessment, but that same was owned by Palatka Hotel & Land Company; that the Palatka Hotel & Land Company, the owner of said land is in possession thereof and their attorney has advised that said tax sale be not redeemed on account of said erroneous assessment; that the said R. L. Kennerly has

also presented to me the affidavit of the Tax Assessor of Putnam County, Florida, showing that said land was not returned to him for assessment for the year 1915 by any one."

After the receipt of this certificate by the Comptroller, application was made to him for refund of the State's portion of the amount paid for the certificate. This the Comptroller refused, not upon the grounds that he was not satisfied of the correctness of the certificate of the Clerk, but as he says because "Section 581 of the General Statutes has never been so construed by this Department as to authorize the refund of money on tax certificates, except when it could be shown conclusively that the property was not subject to taxation or that the taxes had been duly and regularly paid prior to the advertisement of the land for unpaid taxes."

This is a positive assertion by the Comptroller that he will consider only the first two grounds upon which the statute requires a refund, and will ignore and refuse refunds upon the grounds added to Section 581, by Chapter 6816, Laws of Florida, approved June 5, 1915, and in effect is a refusal to satisfy himself of the correctness of the Clerk's certificate. The statute says that there shall be a refund for other reasons than those observed by the Comptroller, who says that he will not refund except in those instances mentioned by him.

Under the construction placed upon the statute by the majority of the court—that the Comptroller must be certified of the correctness of the facts proven to the Clerk before refunding the State's portion of the money—it would be his duty to satisfy himself whether the facts stated in the Clerk's certificate are true or not, and this is what he has refused to do, and which the mandamus

seeks to require him to perform. He does not say that he has decided that the facts certified to him by the Clerk are not correct, or that he is not satisfied of their correctness, but plants himself squarely on the ground that he will ignore the amendments to Section 581, and not do what is thereby. required of him, and that he will only observe that part of the law which "provides for a refund when the property was not subject to taxes or when the taxes had been duly and regularly paid prior to the advertisement of the land for unpaid taxes." If the statute places upon him the duty of passing upon the correctness of the finding of the Clerk of the Circuit Court, as held by the majority of the court, it is such a duty that mandamus will require him to perform, when it appears that he refuses to do so, and sets up against the statutory requirement, a departmental regulation, by which he ignores the facts stated in the Clerk's certificate, and refuses to consider them as a basis for a refund.

This brings me to the consideration of the constitutionality of the amendment which the Comptroller refuses to enforce. Of this the opinion of the majority of this court says: "The amendment to Section 581 included in brackets in the Act of 1915 above quoted apparently involves judicial matters that might not legally be conferred upon an administrative officer."

A distinction is here sought to be drawn whereby the amendment to Seciton 581 is unconstitutional, and Section 581 before amendment, constitutional. In this view Mr. Justice TAYLOR does not concur, but considers that the entire statute is unconstitutional. I find it easier to accept that view than that of the majority of the court which makes the distinction.

All the grounds of the Act that authorizes a refund, re-

quire proof to be made, a decision reached thereon, and the application of the law to the finding—whether made by the Clerk or the Comptroller.

One of the grounds of the Act, that the Comptroller recognizes as binding upon and authorizing him to make a refund, is that "the lands were not subject to taxation at the time of the assessment on which they were sold."

This is not included in the portion of the Act that this court intimates is unconstitutional.

Some of the conditions that render property not subject to taxation in Florida, are:

"First, All property, real. and personal, of the United States,. and of this State.

"Second, All public property of the several counties, cities, villages, towns and school districts in this State, used or intended for public purposes, including both real and personal property of all fire, hose and hook and ladder companies, except lands sold for taxes for the use of any counties, cities, villages, towns or school districts.

"Third, Such property of educational, literary, benevolent, charitable and scientific institutions within this State as shall be actually occupied and used by them solely for the purpose for which they have been or may be organized, but property of such institutions which is rented wholly or in part and the rents, issues and profits only used by such institutions shall not be exempt from taxation, nor shall any property held by them as an investment or for speculation be exempt from taxation.    Provided, That this section shall not be construed to apply to the lower stories of charitable or benevolent institutions, necessarily using the upper stories of their lodge rooms and who rent the ground floor of such buildings, using said rents, issues and profits for the benefit of such charitable

and benevolent purposes, or to the ground floor of public libraries, the rents, issues and profits of said ground floor being used for the benefit of said libraries.

"Fourth, All houses of public worship and the lots on which they are situated, and all pews or steps and furniture therein, every parsonage and all burying grounds not owned or held by individuals, or corporations for speculative purposes, tombs and right of burial; but any building being a house of worship which shall be rented or hired for any other purpose except for schools or places of worship shall be taxed the same as any other property.

"Fifth, All public libraries and real and personal property belonging to and connected with the same, consisting of the library itself and all real and personal property held for the actual use and occupation of such library only, and not for rent, profit or speculation.

"Sixth, All property, real and personal, held by and belonging to any agricultural society in this State, and used exclusively for the meetings or exhibitions of such society, which now is or may hereafter be lawfully organized in pursuance of law.

"Seventh, There shall be exempt from taxation property to the value of two hundred dollars in the county in which she resides, to every widow dependent upon her own exertions, and to every person who has lost a limb or been disabled in war or by misfortune, and dependent upon their own exertions to that extent that disqualifies him or her from the performance of manual labor."

"That all property of Young Men's Christian Associations within this State, which shall be actually occupied and used by them for the purposes only for which they have been or may be organized, shall be exempted from taxation."

All these exemptions, with their several "exceptions" and "provisos" the Comptroller says he will pass upon, and if an assessment comes within any of the exemptions, will make the refund.

This would require the determination of questions of law to as great, if not to a greater extent, than any of the grounds of the amendment, yet the decision of this court puts the stamp of its approval on this part of the act as constitutional, and condemns as unconstitutional the amendment that only makes additional grounds authorizing the State and County to refund improperly acquired money.

If the amendment containing the additional grounds authorizing a refund is unconstitutional, all the grounds giving either the Clerk or the Comptroller such authority are subject to the same condemnation. And that is the view of Mr. Justice TAYLOR.

Again, if the amendment is unconstitutional, as involving "judicial matters that might not legally be conferred upon an administrative officer" a fortiori, Sec. 579 of the General Statutes, is unconstitutional, for that section empowers the Comptroller to cancel tax certificates held by the State, under certain named conditions "or that the sale was otherwise illegal or improper," and he is authorized to surrender the certificate "in such manner and upon such terms as may in his judgment be best to protect the interests of the State and do justice to the owners."

The State has received the relator's money for a tax certificate sold to him by the State, and cannot make him a valid deed for it. An individual in the same situation would be required to return the money, and it seems that the Legislature intended to adopt for the State the same

rules of financial integrity that individuals are expected and required to observe.

If the State refunds this money it will not lose it, because the property having been improperly assessed and the taxes not having been paid, the land can be re-assessed for the 1915 taxes and the amount collected. On the other hand, if the State refuses to refund the money the holder of the certificate has no redress.

I think the writ should issue.