Harry L. Coe, Jr. Executive Director Department of Revenue Tallahassee
QUESTIONS:
1. Is the tax collector of a county authorized to obtain a refund from the governing body of the county for dishonored checks representing payment for occupational license taxes under Ch. 205, F. S., when such checks were dishonored subsequent to disbursement of the funds represented by the checks by the tax collector to the county treasury?
2. If the tax collector is not authorized to obtain a refund from the county governing body in the above-referenced situation, may the dishonored check be treated as an office expense of the tax collector if the procedures regarding collection efforts delineated in s. 195.087(3), F. S., have been followed?
3. If such dishonored checks may not be treated as an office expense after compliance with the procedures delineated in s.195.087(3), F. S., what bookkeeping procedure should be followed by the tax collectors respecting such dishonored checks?
SUMMARY:
The tax collector of a county is not authorized to obtain a refund from the county treasury for dishonored checks representing payment for occupational license taxes. Such checks when deposited in the county treasury pass from the collector's control into the public treasury, and payments of county funds may be made only pursuant to the county budget or some legislative act. If the collector properly followed statutory procedure in the handling of a dishonored check, he would not be personally liable. The tax simply would not be paid. If, however, the collector disbursed money from other sources in his office in payment of the check which subsequently was dishonored, the collector would be personally liable for any shortage in the other public funds from which he made payment into the county treasury on account of the dishonored check.
AS TO QUESTION 1:
Question 1 must be answered in the negative. When the county tax collector pays over to the county treasury moneys representing occupational license tax payments, such moneys pass from the tax collector's control into the public treasury. Seaboard Airline Railway Company v. Allen, 89 So. 555 (Fla. 1921); State ex rel. Hillsborough County v. Amos, 131 So. 122 (Fla. 1930); and AGO 062-119. Chapter 129, F. S., requires that county funds be paid out only pursuant to the county budget or some legislative enactment. Attorney General Opinion 062-119.
Section 832.06(1), F. S., provides authority for a refund when the tax collector accepts a worthless check relative to certain taxes, fees, and licenses. While such statute does reference occupational license taxes, it provides for a refund of such occupational license taxes, paid into the public treasury pursuant to a worthless check, only from the Department of Revenue and not from any county or local governmental entity. In AGO's 071-153 and 074-253, s. 832.06(1) was determined to relate only to state taxes and was deemed to impose the duty upon the Department of Revenue, subject to the tax collector's compliance with the statutory provisions, to refund only such taxes which have in fact been remitted to the Department of Revenue.
Since s. 832.06, F. S., is inapplicable to other than state taxes, I can find no express statutory authority which would authorize the refund of moneys paid by the tax collector into the county treasury prior to dishonor of the check pursuant to which they were paid to the tax collector.
AS TO QUESTION 2:
Question 2 is answered in the negative. It is a general rule of law that:
 In the absence of statutory requirement, those responsible for collecting taxes are not obligated to accept checks or drafts in payment of taxes, and even when checks or drafts are accepted, they do not operate to discharge the tax until they are in fact paid. [31 Fla. Jur. 463 Taxation s. 308.]
Section 195.087(3), F. S., provides:
 Any check received by the office of the collector which is returned by the bank upon which the check is drawn shall be the personal liability of the tax collector unless the collector, after due diligence to collect the returned check, forwards the returned check to the state attorney of the circuit where the check was drawn for prosecution. This subsection shall not apply to ad valorem taxes, in which case the collector shall proceed under chapter 197.
This is a legislative reversal of the general principle of law enunciated in AGO 064-91 that:
 . . . The various tax collectors should be advised that they should accept personal checks only at their peril. There is nothing in the statutes which requires or authorizes them to accept personal checks. Therefore, if they do so, and the check is ultimately not paid, then the tax collector would be personally liable for the amount of the check.
In light of s. 195.087(3), F. S., the tax collector would not be personally liable for receiving a bad check in payment of county occupational license taxes if the procedures of s. 195.087(3) have been followed. The instant matter, however, involves an additional factor, i.e., the tax collector, prior to the check in payment of county occupational license taxes having cleared the bank upon which it was drawn, paid moneys of his office into the county treasury in an amount equal to the amount of such subsequently dishonored check. The tax collector, upon receipt of the check, deposited the same in his office account, s. 219.075, F. S., and, prior to the check's having cleared, disbursed moneys from the office account into the county treasury in an amount equal to the face amount of the check. The check was thereafter dishonored, and the tax moneys represented by such check were never in fact collected. Consequently, the moneys utilized by the tax collector for payment into the county treasury must necessarily have been taken out of other public funds of the tax collector's office derived through the performance of other statutory duties of the tax collector. It also necessarily follows that, to the extent such other public funds of the tax collector's office were so used, they cannot now be properly accounted for.
Section 219.07, F. S., which relates to the handling of county public money, provides:
 Each [county] officer shall, not later than 7 working days from the close of the week in which the officer received the funds, distribute the money which is required to be paid to other officers, agencies, funds, or persons entitled to receive the same; provided, that distributions or partial distributions may be made more frequently; and provided further, that money required by law or court order, or by the purpose for which it was collected, to be held and disbursed for a particular purpose in a manner different from that set out herein shall be held and disbursed accordingly. (Emphasis supplied.)
Additionally, s. 219.075(2), F. S., provides:
 Except when another procedure is prescribed by law, ordinance, or court order as to particular funds, the tax collector shall, as soon as feasible after collection, deposit in a bank designated as a depository of public funds, as provided in s. 659.24, all taxes, fees, and other collections received by him and held prior to distribution to the appropriate taxing authority. Immediately after such funds have cleared and have been properly credited to his account, the tax collector shall invest such funds according to the provisions of this section. . . . (Emphasis supplied.)
It is well settled in this state that public officers are held strictly accountable in their positions as custodians of public funds and may disburse such funds only in the manner provided by statute. Palbicke v. Lee, 172 So. 481 (Fla. 1937), White v. Crandon, 156 So. 303 (Fla. 1934), and AGO's 077-120, 076-191, and 046-22.
In AGO 077-120 it was noted that `the acceptance of a check by a public officer constitutes only conditional payment, and if the check is never presented or is dishonored, the tax or fee remains a charge.' If the tax collector fulfills the requirements of s.195.087(3), F. S., no personal liability for such tax represented by the check would be imposed upon the tax collector. When, however, the tax collector pays public moneys derived from other sources into the county treasury in an amount equal to the face amount of the dishonored check for county occupational license taxes, such tax collector would be personally liable for any shortages in such other accounts occasioned by the improper payment of such moneys into the county treasury.
AS TO QUESTION 3:
Question 3 has in general been answered in the response to question 2. Pursuant to s. 219.075(2), F. S., any checks received in payment of county occupational license taxes should be deposited by the tax collector in a bank designated as a depository of public funds as provided in s. 659.24, F. S., with such occupational license tax collections distributed only after `such funds have cleared and have been properly credited' to the tax collector's account. When such check does not clear, but instead is dishonored, the tax collector should follow the procedures outlined in s. 195.087(3), F. S., in which instance such collector will not be personally liable for the amount of taxes represented by such dishonored check. It is only after clearance of such check that moneys should be disbursed by the tax collector into the county treasury in payment of the county occupational license taxes represented by such check. When, however, the collector releases other moneys of his office into the county treasury prior to the check's having cleared, and such check is ultimately dishonored, the tax collector would be personally liable for the amount of any shortages in such other funds of his office as were used to make the payment into the county treasury.
Section 215.34(1), F. S., which involves the direct deposit into the State Treasury of moneys collected by the tax collector on behalf of the state, provides:
 Any check, draft, or other order for the payment of money in payment of any licenses, fees, taxes, commissions or charges of any sort authorized to be made under the laws of the state and deposited in the State Treasury as provided herein, which may be returned for any reason by the bank or other payor upon which same shall have been drawn shall be forthwith returned by the State Treasurer for collection to the state officer or the state agency making the deposit. In such case, the Treasurer is hereby authorized to issue a debit memorandum charging the proper fund or account to which same shall have been originally credited and shall send a copy of said debit memorandum to the state agency making the deposit and to the Comptroller stating the reasons for returning the said check, draft, or other order. Such procedure for handling noncollectible items shall not be construed as paying funds out of the State Treasury without an appropriation, but shall be considered as an administrative procedure for the efficient handling of state records and accounts.
Although such a procedure would appear to be an appropriate method for resolving the instant matter, the Legislature has not provided similar statutory authority to the tax collector. Since the tax collector has `only such powers and duties and responsibilities as are provided by law,' AGO 079-28, this office is powerless to authorize utilization of a procedure similar to s. 215.34(2), F. S., absent express legislative authorization. Attorney General Opinion 043-183, August 6, 1943, Biennial Report of the Attorney General 1943-1944, p. 212.
In summary, the tax collector, in the absence of express statutory authority, is not authorized to obtain a refund of moneys from the governing body of the county, which moneys represent the payment of occupational license taxes pursuant to a check which was dishonored subsequent to the disbursement of the funds represented by the check to the county treasury. Further, if the tax collector complies with the provisions of s. 195.087(3), F. S., such collector would not be personally liable for the amount of taxes owed by reason of the fact that the check in payment thereof was subsequently dishonored. If, however, such collector, prior to check's having cleared, disburses other public moneys of his office in payment of the tax represented by the check which was subsequently dishonored, such collector would be personally liable for any shortage in the other public funds occasioned by such improper disbursement of moneys.
Prepared by:
Harold F. X. Purnell Assistant Attorney General