344 So.2d 290 (1977)
STATE of Florida, DEPARTMENT OF ADMINISTRATION, Petitioner,
v.
J. Richard STEVENS and Department of Health and Rehabilitative Services, Respondents.
STATE of Florida, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Petitioner,
v.
J. Richard STEVENS, Respondent.
Nos. CC-101, CC-156.
District Court of Appeal of Florida, First District.
April 6, 1977.
David V. Kerns, Tallahassee, for State of Florida, Dept. of Administration (petitioner in No. CC-101).
*291 Douglas E. Whitney, Tallahassee, for State of Florida, Dept. of Health and Rehabilitative Services (petitioner in No. CC-156 and respondent in No. CC-101).
Howell L. Ferguson, of Macfarlane, Ferguson, Allison & Kelly, Tallahassee, for J. Richard Stevens (respondent in Nos. CC-101 and CC-156).
McCORD, Judge.
These are two consolidated petitions for review of administrative action taken from a final order of Kenneth G. Oertel, Director of the Division of Administrative Hearings (as hearing officer) entered on the petition of J. Richard Stevens (one of the respondents herein) for administrative determination of rule-invalidity under the provisions of § 120.56, Fla. Stat. (1975). (We have removed from the captions of these review proceedings State of Florida Department of Administration, Division of Administrative Hearings as it is not a proper party hereto.) After a full hearing pursuant to the statute, the hearing officer, by his final order, ruled that a Directive of the Department of Health and Rehabilitative Services (hereafter referred to as HRS) and Guidelines (upon which the directive was based) promulgated by the Department of Administration are rules as that term is defined by § 120.52(14), Fla. Stat. (1975); that they were not adopted pursuant to the dictates of Ch. 120, Fla. Stat. (1975), and in addition are in conflict with § 110.061(1), Fla. Stat. (1975). Petitioners here, DOA and HRS, contend primarily that the hearing officer was without authority to make a judicial determination that the DOA Guidelines and HRS Directive are rules because such determination involves the exercise of a judicial power which may only be exercised by a court. Petitioners further contend that if the Guidelines and Directive were rules, the hearing officer operated beyond the scope of his delegated authority in determining there was no valid adoption of them. We disagree with the contentions of petitioners and affirm.
Respondent, Dr. J. Richard Stevens, was laid off from his position as a research associate with permanent career service status with the Division of Aging of HRS on July 21, 1975. Another employee, Dr. James H. Williams, at that time held a position with the Bureau of Alcoholic Rehabilitation of HRS. The legislature, through the Appropriation Act of 1975 [Ch. 75-280, Laws of Florida (1975)], specifically abolished and did not fund the position held by Dr. Williams. As a result of the abolishment of his position, Dr. Williams was reassigned by HRS to Dr. Stevens' position because Dr. Williams had a greater number of "retention points" under the lay-off policy of HRS than did Dr. Stevens. The lay-off policy is set forth in the aforesaid directive entitled "Department of Health and Rehabilitative Services Directive No. 8-08, effective date July 9, 1974, Subject: Lay-off and Re-employment of Personnel." The "bumping" lay-off was based upon the purported authority of such HRS Directive and DOA Guidelines. Together they set forth a mixed seniority and merit system by which "retention" points are calculated on the basis of years of service and evaluations received during those years of service. This system in essence provides that when a lay-off is to be made, an employee with greater retention points can "bump" or usurp the job of another employee in the same class.
When Dr. Stevens was notified that he was going to be "bumped" and laid off, he filed a petition under § 120.56(1), Fla. Stat. (1975), with the Division of Administrative Hearings by which he sought to have the HRS Directive and the DOA Guidelines declared invalid. § 120.56, Fla. Stat. (1975)[1], provides:
"(1) Any person substantially affected by a rule may seek an administrative *292 determination of the invalidity of the rule on the ground:
(a) That the rule is an invalid exercise of validly delegated legislative authority.
(b) That the rule is an exercise of invalidly delegated legislative authority.
(2) The petition seeking an administrative determination under this section shall be in writing and state with particularity facts sufficient to show the person seeking relief is substantially affected by the rule and facts sufficient to show the grounds on which the rule is alleged to be invalid, which may be stated in the alternative. The petition shall be filed with the division. Within 10 days after receiving the petition, the division director shall, if he determines that the petition complies with the above requirements, assign a hearing officer who shall conduct a hearing within 30 days thereafter, unless the petition is withdrawn.
(3) Within 30 days after the hearing, the hearing officer shall render his decision and state the reasons therefor in writing. The hearing officer may declare all or part of a rule invalid. The rule or part thereof declared invalid shall become void when the time for filing an appeal expires or at a later date specified in the decision.
(4) Hearings held under this provision shall be conducted in the same manner as provided in s. 120.57 except that the hearing officer's order shall be final agency action. The petitioner and the agency whose rule is attacked shall be adversary parties. Other substantially affected persons may join the proceedings as parties or intervenors on appropriate terms which shall not unduly delay the proceedings. Failure to proceed under this section shall not constitute failure to exhaust administrative remedies."
Following the administrative determination under the above statute, judicial review may be had pursuant to § 120.68, Fla. Stat. (1975).
HRS admitted that its Directive has never been adopted as a rule nor filed with the Department of State for publication in the Florida Administrative Code in accordance with § 120.041, Fla. Stat. (1973), or § 120.54, Fla. Stat. (1975). Also, DOA admitted that its memorandum has never been adopted as a rule nor filed with the Department of State pursuant to said statutes.
The final order of the hearing officer from which the petition for review has been filed concluded that the HRS Directive and the DOA Guidelines were rules under § 120.52(14), Fla. Stat. (1975); that they had not been lawfully adopted under Ch. 120, Fla. Stat. (1975), and were therefore invalid. The hearing officer further found that the Directive and Guidelines were additionally invalid because they violate § 110.061(1), Fla. Stat. (1975).
The primary questions raised by DOA and HRS are whether or not the hearing officer had authority to make the determination that the Guidelines and Directive are rules, and, if so, whether he had authority to determine that they were invalid because they were not adopted pursuant to the statutory procedures. They contend that these are judicial questions which only a court can answer and that the hearing officer's ruling invades the exclusive judicial power of the court. We disagree.
Article V, Section 1, Florida Constitution, provides that the judicial power shall be vested in a Supreme Court, District Courts of Appeal, Circuit Courts, and County Courts. In addition it states:
"Commissions established by law, or administrative officers or bodies may be granted quasi-judicial power in matters connected with the functions of their offices."
There is no well-defined line of demarcation between judicial and quasi-judicial functions. The Supreme Court in Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967), said:
"If the affected party is entitled by law to the essentially judicial procedures of notice and hearing, and to have the action taken based upon the showing made at the hearing, the activity is judicial in nature. If such activity occurs other *293 than in a court of law, we refer to it as quasi-judicial."
We find the following pertinent general statements as to the exercise of quasi-judicial power by an administrative officer or agency in American Jurisprudence 2d:
"Many administrative agencies have and exercise powers and functions which are quasi-judicial or judicial in nature and some statutes expressly vest them with quasi-judicial power. The federal courts and the courts of some states, particularly where the constitution expressly so permits, recognize that administrative agencies unquestionably possess certain judicial powers and functions, the term `quasi-judicial' being regarded merely as the designation of approval for the necessary exercise of a part of the judicial power by an agency not a part of the judiciary and to distinguish the powers exercised by such agencies from those exercised by the judiciary." 1 Am.Jur.2d, Administrative Law, § 138.
"Merely because a board or commission is a body belonging to the executive or administrative body of the government, it by no means follows that it may not perform functions which are, in their nature, judicial, and possess and exercise quasi-judicial powers. Statutes conferring quasi-judicial powers and duties upon administrative agencies have been held not to be unconstitutional as encroachments upon the judicial branch of government, especially where such powers and duties relate to matters which are peculiarly affected with public interest or are subject to regulation under police powers, or where provision is made for appeal from decisions of such agencies to the courts." 1 Am.Jur.2d, Administrative Law, § 145.
"Determinative power may be conferred upon an administrative agency so long as there is an opportunity to be heard and for judicial review which satisfies the demands of due process and the courts in upholding particular statutes or ordinances vesting determinative or adjudicatory powers in administrative agencies against a contention of denial of due process of law frequently note or emphasize that the act makes the determination only prima facie proof, makes provision for judicial review, or that judicial review is otherwise available." 1 Am.Jur.2d, Administrative Law, § 154.
"With few exceptions the courts do not consider of moment the fact that determinative or adjudicatory powers are vested in a single individual rather than in a multiple-member agency." 1 Am.Jur.2d, Administrative Law, § 157.
"In speaking of a power or function which pertains more to the administrative than to the judicial, yet partakes of the judicial, the courts refer to it as `quasi-judicial,' or `judicial in nature' or `adjudicatory.' The term `quasi-judicial' is also used to designate a judicial function, but to indicate that it is exercised by a person other than a judge. However, the fact remains that in this connection the function of any particular act must be either administrative or judicial, and there can in reality be no middle or half-way ground between them. The use of such terms is simply a convenient way of approving the exercise of a judicial power by an administrative agency or approving review by the courts of the exercise of powers by administrative agencies. Aside from such approval the terms `quasi-judicial' or `judicial in nature' are used to designate the character of particular proceedings or powers the exercise of which must be accompanied with certain formalities and safeguards characteristic of the judicial process." 1 Am.Jur.2d, Administrative Law, § 161.
In the case sub judice the Constitution has authorized the grant of quasi-judicial power to commissions established by law or administrative officers or bodies in matters connected with the functions of their offices. The legislature has, by Ch. 120, Fla. Stat. (1972), provided a procedure for administrative determination of the validity or invalidity of a rule of an administrative agency by a hearing officer of the Division of Administrative Hearings of the Department of Administration. It has *294 thereby vested in such hearing officer quasi-judicial power to determine whether or not a rule which has been brought into question by a person substantially affected thereby is a valid or an invalid exercise of delegated legislative authority to promulgate such a rule. The procedure which the legislature has established for such adjudication fully complies with due process of law requirements [§ 120.56(2), (3), (4), Fla. Stat. (1975)] and further provides for judicial review of such determination [§ 120.68, Fla. Stat. (1975)]. We are unable to agree with petitioners' contention that the making of such a determination by a hearing officer to whom the legislature has delegated such authority is a judicial determination which such officer cannot make under the doctrine of separation of powers. We find it to be a quasi-judicial function authorized by the Constitution and the legislature which provides for full due process and judicial review.
§ 120.52(14), Fla. Stat. (1975), defines "rule" as follows:
"`Rule' means each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedure, or practice requirements of an agency and includes the amendment or repeal of a rule. The term does not include:
(a) Internal management memoranda which do not affect either the private interests of any person or any plan or procedure important to the public,
(b) * * *
(c) * * *"
If, as a threshold question, the hearing officer must determine whether or not the particular directive or guideline is a rule under the above definition before he can arrive at the question of whether or not it has been validly adopted as a rule, we do not consider that such act does violence to the doctrine of separation of powers when the ruling complies with the due process requirements set forth in the statute with judicial review available as provided therein. We find such to be a quasi-judicial function.
Kenneth Culp Davis in his "Administrative Law Treatise," in discussing the doctrine of separation of powers in relation to the administrative process, said:
"In the organic arrangements that we have been making in recent decades in the establishment and control of administrative agencies, the principle that has guided us is the principle of check, not the principle of separation of powers. We have had little or no concern for avoiding a mixture of three or more kinds of powers in the same agency; we have had much concern for avoiding or minimizing unchecked power. The very identifying badge of the modern administrative agency has become the combination of judicial power (adjudication) with legislative power (rule making). But we have taken pains to see that the agencies report to and draw their funds from our legislative bodies, that the personnel of the agencies are appointed and reappointed by the executive, and that the residual power of check remains in the judiciary. As long as we continue to emphasize the principle of check, we may safely continue our increasingly deep-seated habit of allowing the blending of three or more kinds of power in the same agency." K. Davis, Administrative Law Treatise, Vol. 1, p. 68 (1958).
We have considered the opinion of the Supreme Court in Otto v. Harlee, 119 Fla. 266, 161 So. 402 (1935), cited by petitioners. There, the court held that a statute could not empower a circuit court clerk to make an ex parte determination that a tax sale certificate is invalid. The court said:
"A tax sale certificate is the evidence of a lien and confers upon its holder valuable rights of which he may not be involuntarily deprived without due process of law and judicial determination. The construction of a tax certificate and the determination of whether or not it is void is a question of law and can be validly determined only by the judiciary."
The court went on to say that the legislature cannot delegate the exercise of judicial functions to ministerial officers.
*295 Otto dealt only with a legislative grant of power to a ministerial officer to make an ex parte adjudication of the invalidity of a tax sale certificate. The case sub judice does not relate to an ex parte adjudication by a ministerial officer without provision for due process and judicial review, as did Otto. Here the legislature has delegated quasi-judicial authority to administrative hearing officers to determine the validity or invalidity of rules of administrative agencies.[2]
The statute granting the authority here questioned made full provision for due process in the exercise of such authority and provided for judicial review. Such legislation is a logical step in the continuing evolution of administrative law designed to cope with the rapid mushrooming of state boards, commissions and agencies, all engaged in adopting rules to carry out their legislatively delegated functions. In 1939, three years after Otto, the Supreme Court in South Atlantic S.S. Co. of Delaware v. Tutson, 139 Fla. 405, 190 So. 675 (1939), said:
"Authority conferred and duties imposed upon the `Florida Industrial Commission' by chapters 17481 and 18413, Laws of Florida, are essentially administrative in their nature, even though some portions of the authority so conferred may be regarded as quasi judicial, involving official judgment, which is not forbidden by the constitution to be exercised by administrative officers with appropriate statutory authority and limitations in order to effectuate duly authorized governmental [sic] administrative functions. Some governmental functions that are not essentially legislative or judicial powers may by statute be conferred upon administrative officers, boards or commissions, to be exercised within appropriate statutory limitations, even though such governmental functions may also by statute be assigned to judicial or other proper officials who under the constitution are vested with governmental powers. See State v. Atlantic C.L.R. Co., 56 Fla. 617, 47 So. 969, 32 L.R.A.,N.S., 639; State ex rel. Young v. Duval County, 76 Fla. 180, 79 So. 692. See also 71 C.J. 290.
The constitution permits some judgment and discretion to be exerted by the legislature in enacting statutes authorizing administrative functions to be performed by administrative officers, boards or commissions when no provision of organic law is violated in making or administering such provisions. See Art. II; secs. 17, 20, Art. IV; secs. 1, 35, Art. V; sec. 30, Art. XVI."
* * * * * *
Such a State policy with reference to administrative determinations, is becoming more and more essential to efficient government, since the processes of the legislative and judicial departments are not designed to perform the constant and expeditious functions necessary to administrative governmental regulations of expanding business, commercial, industrial, and social relations in the rapid progress and development of a great and growing State."
More recently the Supreme Court in Canney v. Board of Pub. Instruction of Alachua Cty., 278 So.2d 260 (Fla. 1973), said:
"The true meaning of the separation doctrine is that the whole power should not be exercised by the same hands which possess the whole power of either of the other departments. See Administrative Law by Forkosch, § 36, p. 36. Except in the comparatively rare cases where a combination of powers in a single agency was deemed to threaten, in some measure, the restrictive primacies of the Legislature or of the courts, the states have sustained the statutory delegation of *296 combined legislative, prosecutory, and judicial powers to agencies. See State Administration Law by Cooper, Vol. 1, § 2(B), p. 25.
* * * * * *
Once the Legislature transforms a portion of a board's responsibilities and duties into that of a judicial character so that the board may exercise quasi-judicial functions, the prerogatives of the Legislature in the matter do not cease. The Administrative Procedure Act (Fla. Stat. § 120.20 et seq. F.S.A.), establishes minimum requirements for the adjudication of any party's legal rights, duties, privileges or immunities by state agencies ... A board exercising quasi-judicial functions is not a part of the judicial branch of government."
Much water, in the numerical growth and expansion of administrative agencies and in the development of administrative law, has run over the dam since Otto. The delegation of authority there (judicial authority granted to a ministerial officer which was wholly lacking in due process) was so widely different from that granted by § 120.56, Fla. Stat. (1975), that we do not consider Otto to be controlling authority on the question here before us.
Finding as we do that the hearing officer had power to make the foregoing adjudications, we turn now to the question of whether or not his determination was correct. We find that it was. The Guidelines and Directive set forth procedures for "bumping" or laying off an employee whose position has not been terminated upon termination by the legislature of another employee's position through the use of a point system set up by the Guidelines and Directive. Under the questioned Guidelines and Directive, the employee whose position is terminated is shifted to the position of another employee who has less points and the latter is laid off. These two documents clearly are agency policy statements of general applicability which were applied and were intended to be applied with the force of a rule of law. They are not internal management memoranda which do not affect either the private interests of any person or any plan or procedure important to the public. They do not fall within any of the other exceptions to the statutory definition. The procedures established by the Directive and Guidelines very definitely affect the private interests of the employees involved as well as procedures that are important to the public. The Directive purports in and of itself to create certain rights and adversely affect others. It was promulgated for prospective application sometime before this immediate exigency arose and was issued by the agency head for implementation by subordinates with little or no room for discretionary modification. This Directive states that the prescribed point system determines "retention rights" and states that
"Permanent employees shall be entitled to retain employment in the class within the department by the exercise of superior retention rights as determined above ..."
The Directive and Guidelines not having been legally adopted and promulgated as rules are therefore void and of no effect.
The examiner also concluded that the Directive and Guidelines were invalid due to conflict between them and § 110.061, Fla. Stat. (1975), which states:
"(1) Any employee who has permanent status in the career service may only be terminated for cause by the agency or officer by whom he is employed."
The hearing officer concluded that "cause" does not encompass the bumping procedure attempted to be established by the Directive and Guidelines. We neither agree nor disagree with this additional reason cited by the hearing officer for his ruling. It is unnecessary to the adjudication of the present case, and we leave it for future determination in the event rules on this subject matter are later adopted under Ch. 120. Suffice it to say that one laid off because of the operation of invalid rules is not laid off for cause.
*297 We have considered the other points raised by petitioners and find them to be without merit.
AFFIRMED.
RAWLS, Acting C.J., and SMITH, J., concur.
NOTES
[1] Ch. 76-131, Laws of Florida, substantially rewrote § 120.56 and § 120.56(1), Fla. Stat. (Supp. 1976), now states:

"(1) Any person substantially affected by a rule may seek an administrative determination of the [invalidity] of the rule on the ground that the rule is an invalid exercise of delegated legislative authority."
[2] We have previously held, however, that the power to adjudicate that a rule is unconstitutional is a judicial power rather than quasi-judicial and such adjudication may not be made by an administrative officer or agency. State, Dept. of Adm., etc. v. State, Dept. of Adm., etc., 326 So.2d 187 (Fla. 1 DCA 1976). Also, it should be noted, as we have heretofore pointed out, that the Legislature by Chapter 76-131, Florida Statutes, withdrew from the hearing officer authority to determine the invalidity of a rule on the ground that the rule is an exercise of invalidly delegated legislative authority  a constitutional question.