# ADAMS v DEPARTMENT OF CORRECTIONS, STATE OF FLORIDA

## Case No. 85-3728R

State of Florida, Division of Administrative Hearings

December 27, 1985

### APPEARANCES OF COUNSEL

**Douglas L. Adams,** pro se, and **William Joel Keel,** Personal Representative, for petitioner.

**Julia Forrester,** Assistant Attorney General, for respondent.

### OPINION

ARNOLD H. POLLOCK, Hearing Officer.

### *FINAL ORDER*

Consistent with the Notice of Hearing furnished to the parties herein

as amended as to time of hearing, a hearing was held in this case before Arnold H. Pollock, a Hearing Officer with the Division of Administrative Hearings at the Union Correctional Institution in Raiford, Florida on November 27, 1985. The issue for consideration was whether Respondent has an unwritten rule regarding private property of the inmates at disciplinary hearings and if so, does it constitute an invalid exercise of delegated legislative authority.

## BACKGROUND INFORMATION

On October 23, 1985, Petition executed a Petition to Determine the Invalidity of an Existing Unwritten Rule relating to the requirement that prisoners subject to disciplinary proceedings bring all their personal property with them to the hearing. This Petition was received in the Division of Administrative Hearings on October 25, 1985 and, on November 4, 1985, the Director of the Division referred the file to the undersigned for the conduct of a formal hearing under Section 120.56, *Florida Statutes*.

On November 14, 1985, Petitioner submitted a request that William Joel Keel, another inmate at Union Correctional Institution, be permitted to act as qualified representative for him and on November 19, 1985, the undersigned entered an Order granting the Petitioner's request with the qualification that questions might be asked of the proposed representative at the hearing to determine his qualifications to so act. At the hearing, the undersigned finally granted the request for Mr. Keel to serve as Petitioner's representative.

At the hearing, Petitioner testified in his own behalf and presented the testimony of Robert S. Craig, also an inmate at UCI, and Frank Denmark, a corrections officer at the same institution. Petitioner also introduced Petitioner's Exhibit 1 and 2 and requested that the Hearing Officer take official Recognition of Department of Corrections Rule 33-22; the opinion of the First District Court of Appeal in the consolidated cases of *Department of Corrections v. Piccirillo and Lloyd* and *Department of Corrections v. Holland and Adams*, opinion filed May 21, 1985. Respondent also presented the testimony of Sgt. Denmark and in addition, that of Mr. Timothy J. Cunningham, the Chief Classification Supervisor at UCI; Michael D. Howe, a Corrections Officer II at UCI; and offered Respondent's Exhibit A.

Subsequent to the hearing, the Respondent submitted Proposed Findings of Fact which have been throughly evaluated and considered in the preparation of this Final Order. There was no dispute as to the facts in this case. The only question was one of law. Consequently, Respondent's recitation of the facts is accepted in toto. Petitioner's

proposed order was not timely filed but was considered and the proposed findings were accepted and incorporated herein.

## FINDINGS OF FACT

Douglas L. Adams is an inmate at Union Correctional Institution. On August 26, 1985, he was awakened early in the morning and brought before a disciplinary hearing for an alleged violation of institutional rules and regulations. Prior to the hearing, he was advised by a correctional officer to pack up all his personal property and to bring it with him to the hearing.

Mr. Adams took with him as much as he could, which included his clothing and other personal effect, but he was unable to carry all he owned with him at one time. He did not ask for either help in carrying his property or a cart to carry it in prior to leaving his cell area to go to the hearing. When he arrived at the movement center where the hearing was to be held, he advised the authorities there that he did not have all his property with him. At that point, he asked for help or the use of a cart to go get the rest of his property but he was refused because no cart was there.

As a result, he went to the hearing leaving some of his property in his cell area and while in the hearing, contends he was required to leave his property in the control center. This property was secured in a storage room behind the control center which, while not locked, was not available for access to other inmates unless they were accompanied by a corrections officer.

When the hearing was over and Mr. Adams, who had been directed to administrative confinement, requested to go back to his former cell area to get the rest of his property, his request was refused. His property was inventoried by UCI personnel at that time, but because in his opinion the inventory was not complete, Mr. Adams refused to sign the form. When he was released from administrative confinement, he claims he did not get all his property back. He relates that he was told he had forfeited whatever property he had not brought to the hearing. As a result, he filed a complaint on September 16, 1985, which was subsequently denied.

Petitioner has been incarcerated in 7 or 8 institutions within the Department of Corrections including Florida State Prison, River Junction Correctional Institution, Baker Correctional Institution, Polk Correctional Institution, Old Unit, the Reception and Medical Center, and DeSoto Correctional Institution. At each one of these institutions a rule similar to this one was in existence. At Baker Correctional Institution, the inmate was required to bring his mattress as well.

**217**

Robert Craig has been in prison for a total of 27 years and has been incarcerated in almost every major penal institution in the State of Florida that was built prior to the last five years. At Avon Park Correctional Institution, he underwent a disciplinary hearing and was told at the time to bring all his personal property with him to the hearing. While in the hearing, he was required to leave all his property outside in the hall.

At Cross City Correctional Institution, the guards took him to the hearing without his property, bringing his property along afterwards. In essence, at all the institutions where he was incarcerated, there was some variation of the same procedure regarding his personal property. He either had to bring it to the hearing or it was packed up prior to the hearing. At no institution was his property inventoried prior to the hearing. As a result, he has lost personal property including a calculator for which he was subsequently reimbursed by the institution.

According to Mr. Craig, if the inmate does not bring his personal property with him, he either is given a deficiency report or is precluded from going back to get it when the hearing is over.

Sgt. Denmark has worked for approximately 8½ years with the Department of Corrections, all at UCI, where he formerly worked at the movement center. One of the functions he performed there was to handle prisoners coming for a disciplinary hearing. The rule as explained to him regarding the inmates' personal property is that the inmate is required to bring all of it with him to the hearing.

Once the property is brought with the inmate to the hearing, the inmate is free to either take it into the hearing with him or to leave it in the storage room in back of the movement center during the hearing. If the inmate is sentenced to disciplinary confinement as a result of the hearing, in that case, and at that point, the inmate's property is inventoried. If the inmate is not sentenced to disciplinary confinement, the property is returned to the prisoner who is returned to his area.

In the instant case, Mr. Denmark heard the Petitioner tell Sgt. Howe, when he arrived at the movement center, that he had left some of his property in his cell. However, when Adams when into his hearing, he neither took his property with him nor requested that it be secured.

According to Mr. Cunningham, the Chief Classification Supervisor, the Union Correctional Institution Policy, (85-52.9 B1) requires inmates to bring all their property to disciplinary hearings. It is an old policy, and the reason for it is to protect the property from theft. In a

218

disciplinary hearing, there is a chance that an inmate might not get back to his old cell to retrieve his property after the hearing. For security reasons, institution officials prefer not to take a prisoner back to his old cell after a hearing because, at that point, he is often angry as a result of the hearing and disruptive.

All Department of Corrections' institutions in the region incorporated UCI, except Florida State Prison, have a similar policy. Inquiry of corrections personnel at the agency headquarters in Tallahassee reveals that most major DOC facilities have a similar policy. There are a total of 33 other facilities which hold less than 100 inmates each. These smaller institutions do not, generally, have a similar policy and Florida State Prison has a different situation because of the different security problems. It is the needs of the institution, however, which determine the use of the policy.

Mr. Cunningham is aware of Mr. Adams' hearing and the complaint filed as a result thereof. Upon inquiry it was determined that Mr. Adams had failed to establish a loss and the complaint was denied. Mr. Cunningham does not know whether there was an investigation into the loss of the property left in the cell.

It is Mr. Cunningham's understanding that if the witness cannot carry all his property at one time, normally, if the inmate asks for permission to do so, he will be allowed to go back and get the balance before the hearing. This is not in the procedure approved by DOC, however, nor in the IOP at UCI.

Corrections Officer Howe is also aware of the fact that Mr. Adams had a hearing on August 26, 1985. He, in fact, was called to the movement center to escort several prisoners, including Adams, to the confinement barracks after the hearings. A part of his duty involves inventorying the prisoners' property. Howe told Adams to get his property and bring it for inventory. At this point, after the hearing, Adams said he did not have all his property with him and asked to be taken back to his old cell to get the rest. Howe declined to do this and explained the security reasons for his decision to Adams. He did advise Adams, however, that he would call down to Adams' old cell area and have his property packed which, in fact, he did.

It is standard practice at UCI, according to Howe, that if an inmate has a large amount of property, he can request the use of a cart or wheelbarrow which is assigned to each housing area for carrying this excess property. This cart will be returned by a runner who can also help carry the excess. To his knowledge, inmates are not denied the use of these carts.

Howe declined to return Adams to his old cell area after the hearing because, at the time, Adams was belligerent and unstable and presented a security risk in his opinion and also, because Adams had previously been advised to bring all his property with him and had failed to do this even though there was a way for him to accomplish it.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the parties and the subject matter of these proceedings.

Petitioner seeks an administrative determination that Respondent's non-rule policy that inmates bring all their personal property to disciplinary hearings, is a rule that is invalid because it was not adopted pursuant to the provisions of Section 120.54, *Florida Statutes*.

There is no issue here as to the standing of Petitioner, or as to the fact that Respondent's policy has not been the subject of rulemaking under Chapter 120. It is, therefore, necessary to address only whether or not the policy is a rule within the definition of Section 120.52(15), *Florida Statutes*, which states, in pertinent part, as follows:

120.52 Definitions.—As used in this act:

(15) "Rule" means each agency statement of general applicability that implements, interprets, or prescribes law or policy. . . . .

Agency statements or directives that constitute rules under the above definition but which were not formally adopted in accordance with Section 120.54, *Florida Statutes*, are invalid. *Department of Administration v. Stevens*, 344 SO.2d 290 (Fla. 1st DCA 1977). Although not all statements of incipient policy of an agency must be made within the strict rulemaking process of Section 120.54, those statements which are of general applicability and applied with the force of a rule of law constitutes rules and are invalid unless adopted in accordance with Section 120.54. *McDonald v. Department of Banking and Finance*, 346 SO.2d 569 (Fla. 1st DCA 1977); *Florida State University v. Dann*, 400 So.2d 1304 (Fla. 1st DCA 1981); *Department of Administration v. Stevens, supra*.

In *State, Department of Administration v. Harvey*, 356 So.2d 323 (Fla. 1st DCA 1978), the First District Court of Appeal stated:

The breadth of the definition of Section 120.52(14) indicates that the Legislature intended the term to cover a great variety of agency

statements regardless of how the agency designates them. Any agency statement is a rule if it "purports of itself to create certain rights and adversely affects others," *Stevens*, 244 So.2d at 296 or serves by (its) own effect to create rights or to require compliance, or otherwise to have direct and consistent effect of law. *McDonald v. Department of Banking and Finance*, 346 So.2d 569, 581 (Fla. 1st DCA 1977). . . .

Here, the agency's statement of policy, which was approved by its headquarters in Tallahassee prior to implementation, has been placed in effect, using similar if not identical phraseology, at every major Department of Corrections facility throughout the State of Florida. Only those minor institutions, where prisoner population is less than 100 and security considerations are not as acute, and the Florida State Prison, where security conditions are different, do not utilize it. It is not necessary that the term "general" used in the statutory definition mean "every". It is only necessary that the policy not be utilized for or applied to a specialized area and here, it is clear that the application is too, by far, the greatest percentage of the state's prison population.

It is further clear that there is a need for such a policy, if properly adopted in rule format, because of the security considerations inherent in the operation of a major prison installation. Consequently, it must be understood that the ruling here relates only to the failure of the agency to properly following the rulemaking procedure and not to the need for or legislative authority for such a rule once properly implemented.

Since, however, it is clear from the evidence that Respondent has in the past and intends in the future to apply the requirement to inmates in all major penal institutions within the state, it must be concluded that the stated policy is a rule that is invalid for failure to be adopted in accordance with the provisions of Section 120.54, *Florida Statutes*.

It is, therefore,

ORDERED that Respondent's policy which requires all inmates to bring all their personal property with them to disciplinary hearings is a rule which constituted an invalid exercise of delegated legislative authority for failure to have been adopted in accordance with the procedures of Section 120.54, *Florida Statutes*.

DONE and ORDERED this 27th day of December, 1985, in Tallahassee, Florida.